UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENEVE REEVES,

              Plaintiff,

    v.                                      **DECISION AND ORDER**
                                                      19-CV-775S

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

        1.        Plaintiff Jeneve Reeves brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for supplemental security income and disability insurance benefits under Titles XVI and II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed her applications with the Social Security Administration on February 9, 2016. Plaintiff alleged disability beginning January 1, 2015, due to cardiac-related impairment; obesity; borderline intellectual functioning; affective disorder; and anxiety-related disorder. Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On June 27, 2018, ALJ Anthony Dziepak held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Ralph Richardson appeared and testified. (R.[1] at 30-69.) At the time of the hearing, Plaintiff was 48 years old and had a limited education, with past relevant work experience as an inspector/hand packager (R. at 23).

---

[1] Citations to the underlying administrative record are designated as "R."

4. The ALJ considered the case *de novo* and, on August 6, 2018, issued a written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[2] (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 13.) Plaintiff filed a response on March 10, 2020 (Docket No. 14), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is **granted**, and Defendant's motion is **denied**.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[2]The ALJ's August 6, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

2

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the

> fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.    Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

11.    The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since onset date of January 1, 2015.  (R. at 17.)  At step two, the ALJ found that Plaintiff has the following severe impairment:  cardiac-related impairment; obesity; borderline intellectual functioning; affective disorder; and anxiety-related disorder. Id. at 18.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 18-19.

4

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work including ability to lift or carry 20 pounds occasionally and 10 pounds frequently, sit for six hours total in an eight-hour workday, stand/walk for six hours in an eight-hour workday, but avoid climbing ladders, ropes, or scaffolds, but can occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; can frequently balance, but must avoid working near unprotected heights or exposure to extreme cold or concentrated fumes/odors/dusts/gases; mentally, Plaintiff can perform simple work-related tasks, make simple work-related decisions, adapt to simple changes in a routine work setting (R. at 19; Docket No. 13-1, Def. Memo. at 15; see also id. at 21-22).

13. At step four, the ALJ found Plaintiff was able to perform her past relevant work as an inspector/hand packager. (R. at 23.) Although Plaintiff could perform this work, the ALJ alternatively found other jobs that a claimant like Plaintiff could perform in the national economy. The ALJ accepted the vocational expert's opinion that such a claimant could perform such sedentary occupations as bench worker/preparer, printed circuit board assembly/touch up screener, or film touch up inspector. (Id. at 23-24.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 24.) Accordingly, the ALJ found that Plaintiff is not disabled. (Id.)

14. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ erred in finding Plaintiff had moderate limitation in concentrating, persisting, or maintaining pace (R. at 18) but failed to account for this limitation in the RFC (Docket No. 9-1, Pl. Memo. at 1, 15, 15-18). After finding Plaintiff had borderline intellectual functioning as a severe impairment, the ALJ failed to satisfy

the duty to include the impairment in questions to the vocational expert (Docket No. 9-1, Pl. Memo. at 1, 15, 18-19; cf. R. at 59-63, 18, 23-24).  Plaintiff then contends that the ALJ erred in cherry-picking notes from the treatment record to support the ALJ's conclusion that Plaintiff's headaches would not cause any functional limitation (R. at 21, 431-32, 743-44), yet the ALJ imposed a heightened standard to find that these headaches did not constitute a severe impairment (Docket No. 9-1, Pl. Memo. at 1, 15, 20-24).

15. Defendant responds that the RFC accurately reflects findings regarding Plaintiff's concentration, persistence, and pace (Docket No. 13-1, Def. Memo. at 16-21). Defendant states that substantial evidence supports the borderline intellectual functioning findings (id. at 21-25) and the ALJ's analysis of Plaintiff's headaches (id. at 25-26).

16. For the reasons that follow, this Court **accepts** Plaintiff's arguments.

17. Starting with Plaintiff's mental limitation regarding concentration, persistence, and pace, she faults the ALJ for not accounting for her moderate limitation in this domain in the RFC (Docket No. 9-1, Pl. Memo. at 15, 17-18; see Docket No. 14, Pl. Reply at 1-2).  As defendant notes (Docket No. 13-1, Def. Memo. at 16-17), the special technique used at steps two and three (where the ALJ found moderate limitation) is not an RFC assessment at step four.  The ALJ may take the same information finding a moderate limitation for "paragraph B" criteria and conclude that Plaintiff's functional capacity is not impaired by that moderate limitation.

18. Unlike Karabinas v. Colvin, 16 F. Supp.3d 206, 215 (W.D.N.Y. 2014) (Telesca, J.) (Docket No. 9-1, Pl. Memo. at 16), where that ALJ merely found that claimant merely could perform simple work, the ALJ here cited medical opinions that found Plaintiff had normal or intact concentration.  Dr. Adam Brownfield, Ph.D., was consultant and

examined Plaintiff and found that she had normal concentration (R. at 499-500, 21; Docket No. 13-1, Def. Memo. at 18-19). Dr. Brownfield noted that Plaintiff had intact concentration (R. at 499) and concluded that Plaintiff had no evidence of limitation in following and understanding simple directions, perform simple tasks independently (R. at 500). Dr. Anthony Racaniello, Plaintiff's treating psychiatrist, observed in November 2015 that she had intact concentration (R. at 486, 19; Docket No. 13-1, Def. Memo. at 19). Dr. Tara Russow, Ph.D., conducted a consultative evaluation of Plaintiff on March 5, 2018, and did not observe attention deficits (R. at 913-14, 908, 19, 21; Docket No. 13-10, Def. Memo. at 19). Dr. Russow recommended vocational needs if Plaintiff returned to work such as modeling of target tasks by supervisor or trainer; hands on practice of new tasks with corrective feedback; use of visual cues; extended time for learning new tasks by 100%; and assistance with all written tasks as needed for accuracy (R. at 915). Abigail Heineman, LMHC, conducted a psychosocial assessment of Plaintiff in April 2018 and found that her concentration was normal, that her "attention/concentration is characterized by ability to attend and maintain focus" (R. at 825, 19, 21; Docket No. 13-10, Def. Memo. at 19).

19. The ALJ thus had substantial evidence that Plaintiff's concentration, persistence and pace did not hinder her from performing simple tasks, as determined in the RFC.

20. Next, on inclusion of Plaintiff's borderline intellectual functioning in the hypotheticals posed to the vocational expert, the ALJ found Plaintiff had borderline intellectual functioning (R. at 18) but did not include that limitation in the hypotheticals to the vocational expert (Docket No. 9-1, Pl. Memo. at 18-19; Docket No. 14, Pl. Reply at 1,

2-4; cf. R. at 59-62 (colloquy with vocational expert). In reply, Plaintiff also notes that the ALJ improperly evaluated and explained relevant opinions regarding her borderline intellectual functioning (Docket No. 14, Pl. Reply at 4).

21.   Defendant made several responses. First, at step three, the ALJ found Plaintiff could perform simple work, incorporating the borderline functioning, claiming that these impairments were included in the hypotheticals posed to the vocational expert (Docket No. 13-1, Def. Memo. at 21-22, 24; R. at 18-19). Borderline intellectual functioning is not a de facto disability, contrary to Plaintiff's arguments (Docket No. 13-1, Def. Memo. at 22). Defendant argues that Plaintiff made conclusory arguments that she could not perform unskilled work (id. at 23). Plaintiff, however, did not challenge the ALJ's finding that she could perform her past relevant work as a packer (id. at 24; R. at 23).

22.   The RFC did find that Plaintiff could perform simple work-related tasks, make simple work-related decisions and adapt to simple changes (R. at 19). Comparing this RFC to her past relevant work, the ALJ found Plaintiff could perform her past work, relying upon the opinion of the vocational expert that she could perform light work (R. at 23, 58-61). Plaintiff's past relevant work is an occupation in the national economy and the ALJ here has presented vocational expert testimony regarding the existence of jobs in the national economy for a person with Plaintiff's limitations, Gonzalez v. Colvin, No. 15CV6216, 2016 WL 5793425, at *6 (W.D.N.Y. Sept. 30, 2016) (Feldman, Mag. J.) (quoting Isaacs v. Astrue, 07CV257, 2009 WL 528252 (W.D.N.Y. Mar. 2009) (Arcara, C.J., adopting Report & Rec. of McCarthy, Mag. J.)) (cf. Docket No. 9-1, Pl. Memo. at 18), on remand, Gonzalez v. Saul, No. 18CV6268, 2019 WL 478359 (W.D.N.Y. Oct. 1, 2019) (Scott, Mag. J.) (see also Docket No. 13-1, Def. Memo. at 22).

23. The ALJ posed physical limitations in hypotheticals to the vocational expert (R. at 59-62), absenteeism and being on task by the claimant (R. at 62-63), and separately considered Plaintiff's mental impairments without posing her mental impairment as a hypothetical to the expert (R. at 63-66).

24. Since the ALJ separated Plaintiff's ability to perform her past relevant work from her mental limitations, the vocational expert could not opine on her ability (given her mental limitations) to perform that work. The opinion from the expert merely addressed her physical ability to perform (R. 59-60). That the Plaintiff did not challenge the past relevant work finding does not diminish the omission on the mental impairment. The record supports vocational expert providing his opinion on her borderline functioning, see Swope v. Barnhart, 436 F.3d 1023, 1026 (8th Cir. 2006).

25. The cases cited by Defendant are distinguishable because they did not find the claimants there did not prove their borderline functioning, Sanders v. Comm'r, No. 18CV753, 2020 WL 255538, at *5 (W.D.N.Y. Jan. 17, 2020) (Schroeder, Mag. J.); Gonzalez v. Saul, supra, 2019 WL 478359 (affirming Commissioner) (but cf. Docket No. 13-1, Def. Memo. at 22).

26. Thus, it is unclear from this record the basis for the ALJ finding that Plaintiff could perform either her past relevant work or the occupations opined by the vocational expert based on her borderline functioning. Plaintiff's motion on this ground is **granted** and the case is remanded for further proceedings posing to the vocational expert her borderline intellectual functioning for her past relevant work and other occupations Plaintiff might qualify to perform.

27. As for Plaintiff's headaches, in September 2013, she sought treatment at United Memorial Medical Center for pain on the right side of her face and head (R. at 773). On December 27, 2014, she was treated for head pain and swollen lips (R. at 755). On June 20, 2015, Plaintiff was in the emergency room for treatment of her headaches (R. at 431-32, 743-44). On January 29, 2016, Plaintiff was again admitted to United Memorial for headaches (R. at 390). (Docket No. 9-1, Pl. Memo. at 8-9.) On June 30, 2016, Plaintiff was again at United Memorial complaining of body-wide tingling (R. at 715).

28. The ALJ noted Plaintiff's complaints of headaches at step two but found they were not severe because the evidence did not show that her headaches limited her work capability over a twelve-month period (R. at 18). Defendant concedes this because the ALJ found that the headaches had not limited Plaintiff's work for twelve months (Docket No. 13-1, Def. Memo. at 25). At step four and developing the RFC, the ALJ found that Plaintiff had a headache at a pain rating of 9 (of 10) but was not in distress (R. at 21).

29. Plaintiff faults the ALJ for cherry picking from the record to discount the impact of her headaches (Docket No. 9-1, Pl. Memo. at 15, 20, 21-22, 24). The ALJ also erred in imposing his own heightened standard for establishing severity of a headache in requiring Plaintiff to support this claim by having CT or MRI show substantiation for her condition (Docket No. 9-1, Pl. Memo. at 15, 20, 22-24).

30. In her Reply, Plaintiff also argues that the ALJ failed to consider non-severe impairments (such as Plaintiff's hyperactive encephalopathy, a general brain dysfunction caused by significantly high blood pressure, with symptoms that include headaches, Docket No. 9-1, Pl. Memo. at 21 n.1) in combination with severe impairments (Docket No. 14, Pl. Reply at 5). The ALJ also did not consider episodic symptoms in the RFC and

10

failed to account for Plaintiff being off-task time and other limitations (id. at 6-7). Defendant contends that Plaintiff's headaches did not meet the twelve-month duration for consideration (Docket No. 13-1, Def. Memo. at 26). Plaintiff replies that these episodic symptoms needed to be considered (Docket No. 14, Pl. Reply Memo. at 6), see Merritt v. Comm'r, No. 15V6633, 2016 WL 6246436, at *8 (W.D.N.Y. Oct. 26, 2016) (Siragusa, J.).

31. Judge Siragusa's decision in Merritt, supra, is distinguishable because the ALJ there "explicitly accounted for" that claimant's headaches. That clamant was treated for headaches, diagnosed with chronic intractable headaches, and that claimant testified that headaches caused her the most pain, id. at *4, the ALJ cited the lack of treatment notes to support finding her headaches were disabling, id. at *5. The ALJ also determined that Merritt had no longitudinal history for twelve months of intractable headaches, id., but Judge Siragusa noted that the administrative record contradicted that ALJ found, id. at *5-6.

32. The record here, however, is more episodic than the record in Merritt. Plaintiff points to six hospitalizations from September 2013 to September 2017 without asserting that her headaches were daily. Plaintiff's MRI scans during this period did not have any intracranial abnormalities (R. at 393, 397, 720, 678). During some of these intermittent treatments, Plaintiff denied having headaches (R. at 715) although she claimed before that her primary physician diagnosed her with migraines (R. at 431, 433, 390). As noted by Defendant (Docket No. 13-1, Def. Memo. at 26), Plaintiff's hypertension-related headaches were resolved within a day (R. at 760-61). The consideration of MRI or CT scans are part of the ALJ's determination of the severity and duration of Plaintiff's headaches.

33. Contrast Plaintiff's record with the record in Merritt, where that claimant had medical records from January 2013 to February 2014 citing that she had daily headaches or headaches for 30 days a given month, 2016 WL 6246436, at *5, meeting the twelve-month duration requirement.

34. Plaintiff's headaches were properly found not to be severe.

35. As for considering non-severe impairments including Plaintiff's headaches with other, severe impairments, given the lack of duration and the infrequency of Plaintiff seeking treatment, with the remand ordered herein, the ALJ may reconsider her headaches as a non-severe impairment.

36. In sum, Plaintiff's Motion (Docket No. 9) is **granted** on the grounds of the consideration of her borderline intellectual functioning.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:	August 13, 2020
	Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge
